UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
GRETA E. MOSLEY,

                        Plaintiff,                    10-CV-6415
            v.                                **DECISION AND ORDER**

CITY OF ROCHESTER AND
JOSEPH MUSTICO

                        Defendants,
_____

<u>**INTRODUCTION**</u>

Plaintiff, Greta E. Mosley ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. Section 1981 ("§ 1981"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), alleging retaliation after she complained to her supervisor, defendant Joseph Mustico ("Mustico"), of racial discrimination while employed by the City of Rochester ("the City"). The City and Mustico (collectively, "Defendants") now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), contending that Plaintiff has not produced sufficient evidence to support her claims of retaliation. Plaintiff opposes the motion arguing that she has presented sufficient evidence of a prima facie case of retaliation and that the Defendants' proffered reasons for their actions are a pretext for discriminatory retaliation.

After reviewing the entire record, the Court finds that Plaintiff has not satisfied her burden of producing sufficient evidence of discriminatory retaliation such that a reasonable jury could find in her favor. Accordingly, for the reasons discussed herein, Defendants' motion for summary judgment is granted and the Plaintiff's complaint is dismissed with prejudice.

## BACKGROUND

The following facts are taken from the parties' submissions pursuant to Local Rule 56 (a) and the exhibits attached thereto. (Docket Nos. 22, 26.) Plaintiff, an African American, was employed by the City in numerous positions for approximately twenty three years until she was laid off from her position as a Senior Administrative Analyst ("SAA") in the Commissioner's Office of the Department of Community Development ("DCD") on June 30, 2009. Prior to that date, Plaintiff had a relatively successful career with the City receiving multiple pay raises and many good evaluations. Since her lay off in June 2009, Plaintiff worked for the City in a temporary capacity for eight or nine months in 2011.

While Plaintiff was employed in the DCD, from 2006 through June 2009, her supervisor was defendant Mustico, a Caucasian male. The head of the DCD was Julio Vasquez, an Hispanic male. Plaintiff worked with Mustico, Vasquez and four clerks, three of whom were also African American females.

From 2006 through 2007, Plaintiff was responsible for organizing departmental regulatory records into a working log. Plaintiff received a commendation from Mustico for her work in this regard.  She also received a salary increase.  During 2007 and 2008, Plaintiff was tasked with additional assignments, including performing National Environmental Protection Act compliance reviews and drafting legislative proposals for departmental projects.  She was solely responsible for many of these new tasks and she was expected to work independently.

Plaintiff complains that other employees did not encounter such work increases and that Mustico failed to train her to adequately perform her new responsibilities.  The record, however, is devoid of any facts regarding the work load or training of any other employee of any race.  The record also does not contain any evidence regarding the training responsibilities of supervisors like Mustico, and Plaintiff did not witness Mustico providing training to other employees. The record reveals that, in certain cases, Plaintiff was directed to consult manuals or to seek out advice from other departments.  Also, for certain tasks, she worked with a group of employees who assisted one another in completing and understanding the assigned tasks. However, she complains that Mustico was generally unavailable to her and unresponsive to her requests for additional training.

Plaintiff also complains that during her time at the DCD, she was excluded from certain meetings and not given an office that she requested.  Other than Plaintiff's statement that she was excluded, the record does not contain any evidence regarding any DCD meetings and Plaintiff admits that the office space she requested was converted into a conference room.  There is no evidence to support her allegations that she was treated differently than other employee of any race with respect to either the office or the alleged meetings.

During her 2007-2008 Performance review at the end of 2008, Mustico stated that Plaintiff "does not have good knowledge of our proposed agenda items" and that she "requires a high level of supervision."  He also stated that "she brings issues to my attention expecting a resolution rather than resolving the issue herself."  In other areas of the evaluation, Plaintiff met expectations. He stated that Plaintiff and he were working on a performance improvement plan, but a formal plan was not implemented prior to Plaintiff's lay off. Despite this performance review, Mustico recommended a salary increase in January 2009. Plaintiff alleges that shortly after this review, on or around January 6, 2009, she complained to Mustico of discrimination based on his treatment of her during her time at the DCD.

At some point during the 2008-2009 fiscal year, Rochester Mayor Robert Duffy requested that the heads of three different City

departments, including the DCD, develop a consolidation plan for the 2009-2010 budget year.  The department heads, Julio Vasquez, Carlos Carballada and Molly Clifford, were tasked with eliminating job functions and/or positions that were duplicative or overlapping within the three departments.  The department heads created a subcommittee of 13 City employees, including Joe Mustico, who were asked to give recommendations to the department heads regarding the consolidation process. A representative from the City's human resources department also sat on the subcommittee to ensure that local, state, and federal labor laws and seniority rules were followed during the process.

As a result of this consolidation effort, thirteen employees across the three departments were either laid off or their positions were eliminated.  Employees were given advance notice that the consolidation was occurring and that their positions were in danger of being eliminated, and they were encouraged to seek out other positions in the City.  All employees who were laid off were placed on a "preferred list," which gave them preference in hiring for any position that became available at their current pay level or below.  The City generally conducts annual lay offs and affected employees are offered positions at lower pay levels to retain employment.

Plaintiff's position as an SAA at the DCD was eliminated and she was laid off on June 30, 2009. She was notified that her

position was subject to a possible elimination in March of 2009. There were two other SAA's across the three departments, one had more seniority than Plaintiff and the other, Laura Nobles, sought out an alternative placement in a different department and was hired.

Plaintiff was placed on the preferred list and offered a position at a lower salary than her SAA position, which she declined.  She alleges that she applied for two positions within the City, but she did not receive a response.  There is no information in the record regarding whether Plaintiff was qualified for either of the positions she applied for or any other circumstances surrounding her failure to secure one of these jobs. She also complains that neither Mustico nor Vasquez assisted her in finding an alternative placement, but the record indicates that the human resources department was tasked with assisting employees with this process.  They accomplished this by placing employees on the preferred list.  Plaintiff remains on the preferred list to this date and she secured a temporary position in 2011 due to her position on the preferred list.

Based on her complaint of discrimination to Mustico in January 2009 and her subsequent lay off in June 2009, plaintiff alleges that she was subject to discriminatory retaliation.  Plaintiff alleges that she believes that Mustico recommended her lay off, but she testified that she had no evidence that Mustico had any

authority to do so.  The record reveals that the three department heads made the final determinations regarding lay offs after hearing recommendations from the subcommittee.  While Mustico was a member of the subcommittee, there is no evidence in the record regarding his role in making recommendations to the subcommittee or to the department heads.

## DISCUSSION

Pursuant to Rule 56, a court shall grant a motion for summary judgment if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a).  Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986).  The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.").

Plaintiff's retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework.[1] See McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802 (1973).  Under this framework, Plaintiff must first establish a prima facie case of discriminatory retaliation by showing: (1) participation in a

---

[1]Plaintiff's claims under Title VII, the NYSHRL and Section 1981 are all analyzed under the same burden shifting standards. See Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2d Cir. 2006); Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 44 (2d Cir. 1984).

protected activity known to the Defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted). Once a plaintiff has established a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. See Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discriminatory retaliation and that retaliation is the true reason for the defendant's actions. See McDonnell-Douglas Corp., 411 U.S. at 802; see also Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 2001).

Plaintiff raises claims for retaliation stemming from the complaint she made to Mustico on January 6, 2009 and her subsequent lay off.  Even assuming that Plaintiff has established a prima facie case of discrimination, the Court finds that the Plaintiff has not come forward with sufficient evidence to rebut the Defendants' legitimate non-retaliatory reasons for their actions such that a reasonable jury could find in her favor.

Defendants have offered evidence that Plaintiff's lay off was part of a City-wide consolidation of three City departments in which certain positions, including the position that Plaintiff occupied, were eliminated because they were duplicative.   A subcommittee of thirteen employees made recommendations to the department heads regarding overlapping job titles and functions across the three departments, and, ultimately, the department heads made the final decisions with respect to which positions or job functions would be eliminated. Personnel from the human resources department also sat on the subcommittee to ensure that the consolidation process adhered to all federal, state, and local labors laws, and that the individuals whose positions were eliminated were given ample notice and the opportunity to seek out other open positions within the City and that seniority policies were followed. Plaintiff speculates that Mustico recommended her lay off after she complained of discrimination.   However, there is no evidence in the record regarding Mustico's role on the subcommittee, including whether he made any recommendations to the subcommittee or the department heads regarding any position. And it is undisputed that Mustico did not have the authority to decide which positions would be eliminated.

As a result of the consolidation, thirteen City employees were either laid off or their positions were eliminated.  Plaintiff was one of these thirteen individuals.  At the time, there were three

individuals under the SAA title in the three departments.  One individual had more seniority than Plaintiff and her position was not eliminated. The other, Laura Nobles, sought out another position in another City department and was hired prior to the June 30, 2009 lay off date.  All employees who were subject to the consolidation process and possible lay off were informed of the possibility of a lay off and instructed to seek out other open positions in the City.  Plaintiff did not find an alternate position and she was laid off on June 30 2009.  Plaintiff was, however, placed on a preferred list where she received a preference to obtain any open position with the City at her current pay level or below.  At some point, Plaintiff was offered a position that would have resulted in a decrease in pay, but she declined the offer.

Plaintiff complains that neither Mustico nor Julio Vasquez helped her find another position at the same pay level before the lay off date and that she was the only person offered a new position at a lower pay level.  However, there is no evidence in the record that Mustico or Vasquez helped any other employee secure a new position, or that it was their duty to do so.  Further, the representative from human resources who served on the subcommittee testified that the human resources department was charged with assisting employees in finding alternative placements, not supervisors or department heads, and it accomplished this through

placing employees on the preferred list for open positions.  He further testified that each year there are individuals who are offered lower paying jobs to avoid a lay off.  The only example in the record of an individual who secured a job at the same pay level after receiving notice of a possible lay off was Laura Nobles, and she secured the new position through her own efforts.

Plaintiff also alleges that she applied for two open positions, but was not hired.  However, the record is devoid of any information regarding whether Plaintiff was qualified for these positions or any other circumstances surrounding her alleged applications that could support her claim of retaliation. See e.g. Syracuse v. Roman Catholic Diocese of Brooklyn, 2010 WL 627114, *8 (E.D.N.Y. February 23, 2010) ("In pursuing her claim of retaliation against defendant, the plaintiff...must also demonstrate that she was qualified for the position that she sought...").

Plaintiff contends that the temporal proximity of her complaint to Mustico to her layoff is sufficient evidence of retaliation to withstand a motion for summary judgment.  While a "strong temporal correlation" between a plaintiff's complaints and an adverse action may create an inference of discriminatory retaliation, see Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir. 1998), under certain circumstances, courts have determined that temporal proximity is insufficient, see e.g.

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 2001)(where a plaintiff is subject to gradual disciplinary actions prior to engaging in any protected activity temporal proximity is insufficient to establish an inference of retaliation).

Here, the circumstances surrounding Plaintiff's layoff are such that the temporal proximity of her lay off to her complaint to Mustico do not give rise to an inference of discriminatory retaliation.  The consolidation process involved the lay off of thirteen individuals, of various races, and accomplished the elimination of two positions under the same title as Plaintiff's. There is simply no evidence in the record that Plaintiff's position was targeted due to her complaint to Mustico and her speculation that Mustico recommended her layoff in retaliation for her complaint of discrimination is insufficient to create a material issue of fact. Further, the various complaints she has regarding her general working conditions are not probative of a claim for retaliation because they occurred before her alleged complaint of discrimination and also, there is no evidence that Plaintiff was treated differently than any other employee at the DCD.

Accordingly, for the reasons discussed herein, the Court finds that Plaintiff has not established a claim for retaliation. Therefore, the Defendants' motion for summary judgment is granted.

## CONCLUSION

Based on its review of the entire record, the Court finds that Plaintiff has not presented evidence from which a reasonable jury could conclude that the Defendants' proffered reason for her lay off was a pretext for discriminatory retaliation.  Therefore, the Defendants' motion for summary judgment is granted and the Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

 S/ MICHAEL A. TELESCA
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           December 17, 2012